MICHIGAN MUT. LIFE INS. CO. v. OLIVER.*

(Circuit Court of Appeals, Fifth Circuit. March 6, 1919.)

No. 3152.

1. INSURANCE ⬥186(5)—LIFE INSURANCE—PAYMENT OF PREMIUMS—MONEY ADVANCED BY AGENT.

Receipt by the insurer in a life policy from its agent of the full first premium, less the agent's commission, and its retention, operated as full payment of the premium, although the payment was made by the agent, who took the note of insured for the amount.

2. EVIDENCE ⬥123(1)—STATEMENT TO PHYSICIAN AS PART OF RES GESTÆ.

Testimony of a physician that he was called by telephone to the house of insured by some one, who stated that insured had "just killed himself," *held* properly excluded, as not part of the res gestæ; it not appearing that the sender of the message was a witness to the killing.

3. EVIDENCE ⬥471(29)—CONCLUSION—UNDERSTANDING AS TO AGREEMENT.

Testimony of the agent who took an application for life insurance, and who delivered the policy, taking the note of insured for the first premium, that it was "understood" that he should remit the money for the premium, *held* admissible as equivalent to a statement that such was the agreement, and not of a conclusion.

---

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari denied 249 U. S. —, 39 Sup. Ct. 494, 63 L. Ed. —.

4. APPEAL AND ERROR ⬅1060(1)—HARMLESS ERROR—ARGUMENT BY COUNSEL. Statements outside the record by counsel for defendant in an action on a life policy, intended to convey to the jury the idea that it was the local belief that insured committed suicide, and counter statements by counsel for plaintiff, *held* improper argument, but not prejudicial.

5. TRIAL ⬅117—ARGUMENT OF COUNSEL—READING OF OPINION IN ANOTHER CASE. Permitting the reading by counsel to the court in the presence of the jury of the opinion in another case bearing upon the law of the case on trial *held* not error.

In Error to the District Court of the United States for the Southern District of Alabama; Robert T. Ervin, Judge.

Action at law by Ann Hope Oliver, administratrix of the estate of William S. Oliver, against the Michigan Mutual Life Insurance Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Forney Johnston and W. R. C. Cocke, both of Birmingham, Ala., for plaintiff in error.

T. M. Stevens, of Mobile, Ala., Page & McMillan, of Brewton, Ala., and Stevens, McCorvey & McLeod, of Mobile, Ala., for defendant in error.

Before WALKER and BATTS, Circuit Judges, and BEVERLY D. EVANS, District Judge.

BEVERLY D. EVANS, District Judge. The action was by the beneficiary of an insurance policy to recover for the death of the insured. Several pleas were stricken by the court on demurrer, and the case was tried on the issue raised by the plea averring that the insured came to his death by suicide while sane. The verdict was for the plaintiff.

[1] 1. The assignments of error on the order sustaining the demurrer to the pleas, which were stricken, are without merit. The demurrer to the replication raised the point as to the sufficiency of its allegations after amendment. The replication alleged that the policy was solicited and delivered by one Mason, acting as agent of the insurer; the insured gave his note to Mason for the first premium on the policy; this note was given to Mason individually, and it was understood between the insured and Mason that the latter would pay to the insurer the amount to which the insurer was entitled for the first premium, and that Mason, after delivery of the policy, and receiving the note, and long prior to the death of the insured, paid to the insurer, or to its agents duly authorized to receive same, the first premium upon the policy, less Mason's commission for writting the policy, and that the money so paid was received and retained by the insurer, or its duly authorized agent. It is insisted that the allegations are insufficient to show the payment of the full premium to the insurer. When the insurer received from its agent the full premium, less the amount claimed by its agent as commissions, and retained the money under those circumstances, the transaction operated as a payment of the whole premium.

[2] 2. The insured, William S. Oliver, was found dead early in the morning of Monday, July 17, 1916, in the garden in the rear of his residence. At the time of his death he was tax collector of Conecuh county, and was short in his accounts in excess of $3,000. He was given by the authorities until Tuesday, July 18th, to settle this shortage. He retired as usual on Sunday night. His wife did not discover his absence from the house until about half past 5 o'clock the next morning. She found his dead body in the garden, lying near a small tree; his feet being about six feet from it. His gun was lying alongside of his body, with the muzzle near his head. The top of his head was blown off. From the spot where the body lay were found tracks, as of a man running from the garden. A short distance off was a sack containing a watermelon and 13 cents. There was testimony that the insured had said to neighbors that theives were stealing his watermelons, growing in the garden where his body was found. Two reports of a gun were heard that night very close together, the first being louder than the second.

The defendant called Dr. Betts as a witness, and asked him:

"How were you summoned, and state what was said to you and how?"

His answer was:

"The phone rang, and the message, as near as I can remember, was, 'I want you to come down and see Mrs. Oliver; Mr. Oliver has just killed himself.'"

The answer to the question was excluded. The witness in his testimony further said that on receipt of the telephone message he went to see Mrs. Oliver and found her in bed, and shortly afterwards he saw Mr. Oliver's body. He arrived at the place about 6 o'clock, and the body had not been removed from the garden.

It is argued that the physician's answer was admissible as part of the res gestæ. We do not think so. Its purpose was to establish the defense of suicide by a declaration of a person at the residence of the deceased. The sender of the message, whether Mrs. Oliver or another, was not shown to be a witness to the circumstances eventuating in Mr. Oliver's death. The declaration sought to be proven was not of a percipient witness to the act, coincident in point of time with the principal fact, tending to explain it. It is a declaration of a person necessarily acting on information obtained after the happening of the principal fact. If the information was the result of an investigation of physical facts, it would be only an inference drawn from those facts. If the information imparted was derived from others, it would be hearsay. So in any event the testimony was properly excluded.

[3] 3. The agent of the defendant, Mr. Mason, testified that the insured made the application to him, and on this application the policy was issued. The witness took the note of the insured for the amount of the premium when the policy was delivered. Witness paid to the defendant the amount of the premium, less his commissions; "the company took that on this particular policy." The witness was asked if he had agreed with Mr. Oliver that he would remit the money necessary to pay the premium, and answered that it

was so understood between him and Oliver. The court refused to exclude this answer on the ground that it stated a conclusion. We think the witness used the word "understood" as synonymous with "agreed," intending to state the fact that such an agreement had been made. Vide Holman v. Clark, 148 Ala. 289, 41 South. 765.

[4] 4. The case was brought in the state court and removed to the District Court of the United States by the defendant. In the course of his argument counsel for plaintiff said:

"Mr. Johnston [counsel for defendant] in his argument to you said, 'Mr. Oliver's faction and close friends were in control of the judicial machinery of Conecuh county, and if they thought he had been foully murdered, as suggested by plaintiff, it is probable that they would have inaugurated prosecutions or proceedings of that character, and the fact that they have not done so carries the inference that they did not believe he had been murdered, but had committed suicide.' "

And, continuing, counsel for plaintiff said:

"If these gentlemen wanted the case left for trial in Conecuh county, where the public knew about the facts of this case, they could have left it there; but they exercised the right to have it removed here, where the juries knew nothing about it. We were willing to try it there, but they removed it."

Counsel for defendant objected to this language, and moved an instruction that it was an improper argument. The court denied the motion, saying: "I think it a proper argument." The only purpose of the statement by defendant's counsel was to convey to the jury the idea that the people of Conecuh county thought that Oliver had committed suicide, and the reply of counsel for the plaintiff was to counter this suggestion by explaining that the suit was originally brought there. We cannot agree with the trial judge that the argument was proper, for neither statement was legitimate argument. Counsel for both plaintiff and defendant traveled out of the record in their statement of facts. But the remarks objected to were not of an inflammatory character, or calculated to prejudice the defendant in having a fair and impartial trial.

[5] 5. In his concluding argument counsel for the plaintiff began to read to the jury a reported case of an action on an insurance policy and a defense of death by suicide. After reading the facts he began to read the opinion of the court, when objection was made to the reading of the case to the jury. The court sustained the objection, whereupon counsel for plaintiff stated that he would read the opinion to the court, and proceeded to read to the court the opinion in that case, over objection made and overruled. It is to be noted that the exception is to the reading of the opinion to the court, and not to the reading of the facts of the case. We have examined the case referred to in this exception, and the discussion of the legal questions in that case are illustrative of the law governing the case at bar. The court indicated by his ruling that he desired to have the law as expounded in that case read to him. What was done in this case does not fall under the rule condemning the reading of facts in a reported decision as evidence of their existence in another case.

6. Other assignments of error examined, and found to afford no

sufficient reason for reversing the judgment of the court. They present no new or novel question, and we forbear a discussion of them. On the whole record we find no reversible error.

Judgment affirmed.